Good morning Your Honours. Good morning. May it please the Court, Paul Fleischman on behalf of Appellant Ines Ibrahim. Your Honours, there are two issues I would like to focus on. One is that the Court used the wrong test. The Court used the Any Reasonable Basis test that is in Jordan. And that test has been abrogated by Abadi and Montour v. Hartford has made that clear. The Court found that the ERC, the ERISA Review Committee, could have reasonably found that Plaintiff could do her job. It's very similar to the There Was Any Reasonable Basis to find that the Plaintiff could have done her job. Okay, so I'm sorry. Did the Court use the language Any Reasonable Basis? No, it used the language that the Committee could have reasonably found that Plaintiff could do her job. Well, those are not exactly equivalent. That's true. One is a counterfactual, which they don't, he didn't say that the ERISA Review Committee had a reasonable basis or that there was necessarily any specific reasonable basis. In ordinary conversation, to say you could have reasonably found this is to say you had a reasonable basis for it. I don't think that's necessarily true, Your Honor, respectfully. I think that to say that somebody had any reasonable basis is to say that there actually was a reasonable basis. To say that somebody could have reasonably found a reasonable basis or a basis is a little different. And tell me how it's different. Well, one says that there was a reasonable basis, and the other one says that there could have been one. So one is more hypothetical, I'd say. But either way, they're both the Jordan test, which is no longer the applicable test when there's a conflict of interest, as in this case. Where did the Court use that language? Used it at, it's ER 240. Line one. It's paragraph 42. It's also, it looks like it's also used in paragraph 39. Yes, Your Honor, that's true. I'm sorry, Your Honor, you're right, it's in paragraph 39. Okay, I don't see it in paragraph 42. Your Honor, I'm sorry. But the Court did find that there was a conflict of interest and that the plaintiff was not provided, or the appellant was not provided a full and fair review. And under those facts, I would think that the Court should consider whether or not the defendant actually had a reasonable basis. Just one more point on paragraph 39. When the Court says sufficient evidence in the AR shows that the ERC could have reasonably found, I mean, the ERC did reasonably find. And if the district court says there's sufficient evidence to support that finding, isn't that all we really have to do? Now, what's wrong with that under a body? Well, there are a few things. The reason that the Court provides is not actually the reason that's provided by the ERC. The Court points to certain activities of daily living that the plaintiff could do with difficulty, but that she had done. Isn't the problem that the ERC wasn't terribly chatty about what the reasons were? That is also. Okay, do they have to be chatty about that? Yes, Boone versus Lockheed says that they do have to. It's the way reasonable people handle important situations, is that they talk about it. So what did the Bayer ER ERISA committee have to say? Well, they didn't say much. The first denial letters, they're found on ER 63 and ER 66, and they provide the definition of disability, and they highlight that there are reasonable accommodations, that language in the definition of disability, but they don't actually tie that into her- Is that the September 30th letter? No, that was the final decision. The first ones are the July 30th letter and the May 16th letter. Isn't the September 30th one the one that we really have to be concerned with? Well, at that point, Your Honor, the claimant no longer had an opportunity to respond to the new reason. If you look at the September 30th letter, though, it says that Dr. Annecy found that she could do certain activities of daily living, and it notes that one of them, for example, is that she could drive a car with an increase in pain if you drive longer than one hour. Now, there's no way this could be interpreted as a reason for her denial because her job required her to travel 50% of a 46-hour work week, mostly by car. But it doesn't tell us how far she had to drive. Well, that's true, Your Honor, but it says 50% of the time of a 46-hour work week. This also doesn't say how the distance that would cause her pain. It's measured in time. Right, but the fact that she was driving 50%, I agree, that is a lot of time. That would be four hours out of an eight-hour day. That does suggest that she might be driving long distances. That would be an easy thing to assume, but it isn't necessarily the case unless we've got some detail. Your Honor, that's absolutely right. If she's making a number of stops. Yes, Your Honor. We don't know really any about these ADLs. We don't know anything about the dog either or her house. She was able to guard him for one day, but we don't know what she did guard him. We don't know if she potted a plant or if she planted a whole field. So your problem is that if they had had this third paragraph on the September 30th letter, the one that refers to Dr. Hennessey's findings, if that had been provided to her earlier, then she might have known how she needed to respond. Exactly, and that's what Boone v. Lockheed requires. It requires a discussion between the parties so that the plaintiff can or the claimant can respond to the reasons for her denial. It's part of what's required from a full and fair review under the regulations. The court found that the lack of a full and fair review was cured by a plaintiff providing certain evidence with her reply brief. However, that evidence wasn't provided to address the fact that she walked her dog. Or her dog, I'm sorry. Had she seen the Hennessey report before the September 30th letter was sent? No, Your Honor. She did not see the report. And I guess my second point, and it's a good segue, is that there was no evidence. There was no evidence regarding these ADLs. The court says that there was sufficient evidence, but he doesn't point to it. They talk about how the physical therapy was more strenuous than her job, but when you actually look at the description of the physical therapy, it talks about gentle muscle release and joint mobilization and focusing on breathing and relaxing, and her job was a 46-hour-a-week job that required her to travel 50% of the time. It's hard to see how that could be considered more strenuous. In fact, the only evidence that defendants have cited to that the physical therapy was more strenuous is a note from a case manager who made that conclusion before she had even received the job description from Bayer. So it's hard to see exactly how that conclusion was reached. Unless Your Honor has any questions, I think I'm going to reserve the rest of my time. You may do so, counsel. We'll hear from Bayer. Good morning. Jerry Schreibstein for the Defendant Appellee Bayer Corporation Disability Benefits Plan. First of all, with respect to the standard, what the court actually said about standard is at a different location on the record, and I'd like to direct the court to ER 230. What the court says there, inciting a case that's later than the case set by opposing counsel, the defendant's deferential standard of review, I'm reading from paragraph 4 on ER 230, does not mean that the plan administrator will always prevail on the merits. Rather, it means only that the plan administrator's interpretation will not be disturbed if reasonable. And this is the case, the Saloma case, which is later than the Montour case, and it's citing to a U.S. Supreme Court case, which is Conkright v. Frommer. So when the district court later says that the ERC reasonably found, it is simply applying the correct standard that this Ninth Circuit has determined. The case set opposing counsel is talking about, Jordan, talks about the any reasonable basis test. The any reasonable basis test was, in fact, done away with. It was the old sort of judicial rule on the smoking gun, and if there's a conflicted decision maker, it's the burden of the claimant to show that that prejudice was a smoking gun, the reason that the claims administrator found the way it did, and that if the claimant couldn't show the smoking gun, the Jordan presumption dropped away, and the administrator's decision would be held on any reasonable basis, right? So that's not what the district court did at all. The district court followed the correct standard that this court has set out in finding that the ERC acted reasonably, that it was reasonable in its interpretations. In viewing what it does, the district court has to do deferring here, where the plan has conferred upon itself discretionary decision-making power to make all factual determinations, it deferred. The district court simply deferred to the reasonable findings of the ERC, and the record is amply supported in this regard. The ERC, in its ultimate denial letter, did in fact cite to, sorry, the Dr. Hennessy report, it did in fact cite to. Yeah, but let's, okay, but this is, Mr. Fleischman, Mr. Fleischman's point is until they get the final letter, she doesn't know what the committee's thinking. She has no benefit, they haven't explained anything to her, they keep telling her that the benefits, that she's not supported by the benefits, they keep citing to her the definition, but they haven't explained anything to her, and they tell her that she can appeal and she can provide additional information, but she has no idea what it is they're thinking, so she doesn't know how to respond to them. And all of a sudden, final letter, they got this paragraph on Dr. Hennessy, and there's no opportunity to rebut it. There's no opportunity to say, well, let me explain about the driving. I understand how Dr. Hennessy might conclude from this, but if Dr. Hennessy had known all of the true facts, he might have come to a different conclusion. That's what I'd like you to know at this point. So what's she supposed to do? So two things, Your Honor. First of all, she's told four separate times to submit any objective medical evidence she has of a disability, any objective medical evidence. She's a doctor. She has submitted medical evidence in the past. She's required under the plan to be currently under the care of a physician. If she has medical evidence of a disability, the cases say she's got to go out and get it and supply it to the administrator, which she didn't do. She didn't submit anything because she wasn't even under the care of a physician. She hadn't even gone to Dr. Yip, her only treating physician, since May 10th. So by the time in July, July 30th, which is the ultimate denial letter from Prudential, she hadn't been under the care of a physician for two and a half months. So that's another qualifying condition for benefits under the plan, which she failed. Then she submits an appeal letter. It says, I will send to you separately my psychological notes, which she never sends. She sends a second letter saying, well, I'll send those to you if you think they're important, which we know that's an excluded condition under the plan for work-related stress. So she never sends those. Furthermore, so she has been told several times what she needs to do. Furthermore, when she finally does file this action, she has legal counsel representing her. They attempt to augment the record. We would disagree with the way they did it. They didn't move to augment the record. But they submit a medical circular from the Lyrica drug, and they go out and get a note from Dr. Yip, who, for all we know, hasn't seen her for four years. So at this point, Dr. Yip submits a two-paragraph note saying, yes, as of May 2008, Inez Ibrahim was disabled. So this is four years after the fact. We would say that that didn't even exist at the time the benefits determination was made. You're suggesting that even if she didn't have an opportunity to respond to Dr. Hennessy initially, that is in 2008, she did get additional information into the record once she got to the district court. That would be the Lyrica warnings and the conclusory note from Dr. Yip. But she didn't provide anything else. So she's complaining that she didn't get an opportunity to rebut Dr. Hennessy. It looks like the district court was generous and would have given her that opportunity. It would appear so, Your Honor. By the time that this litigation was filed, clearly she had seen the ERC's final determination. She went out and responded to it in a way that she thought would change the ultimate finding in the case. And several times in their briefing, Apelli says that she was submitting things that were not directly in response to the ERC's denial letter. Well, what were they in response to then? She has submitted documentation that when she submits determines she was disabled as of the point in time when benefits were terminated. Ultimately, even if we look at all of that evidence and we have two different doctor notes now, one saying yes, she was disabled as of that time, one saying she wasn't, we know that we don't have to defer to the treater. This isn't a Social Security case as many of the cases Ms. Ibrahim cites are. So ultimately what you have, even on an augmented record, is what we would say a reasonable conclusion based on the evidence. The evidence the ERC had before it, at the time, contemporaneous with its decision, were physical therapy notes from two different providers, many of which say she's feeling better. A note from her own physician saying feeling better. And at no point, and I think this is key and not ever addressed, frankly, from Ms. Ibrahim, is she never submitted anything saying she couldn't work. At no point in time had she submitted anything by the time the benefits were denied saying she can't work, she can't do this job, here are the functions of this position she can't perform. Even Yip's last letter, four years after the fact, doesn't say well here's why she's disabled. Her job requires her to do X, Y, and Z. She has to go into airports, she has to wait for luggage. Nowhere does a physician, a medical provider, any objective medical evidence exist to say Ms. Ibrahim cannot do this job. She's disabled from doing this job for medical reasons. Therefore, she wasn't entitled to that. Counsel, help me sort out the standard of review here. Given the fact that Bayer is both the funder and the administrator of the program, and we have plenty of references to structural conflict of interest in our cases. How do we go about sorting that out? Well, I'd point the court to, again, to the, if I'm pronouncing it correctly, the Saloma case, which is at 637 F3rd and the pinpoint is 967. It says where is, in this case, the plan gives the administrator discretion and the administrator has a conflict of interest. We don't dispute the existence of a structural conflict, which is common. We are to judge its decision to deny benefits to evaluate whether it is reasonable. Reasonable does not mean that we would make the same decision. We must judge the reasonableness of the plan administrator skeptically, whereas here the administrator has a conflict of interest. There's no question, I don't think counsel would dispute, there's no question it's a discretionary review subject to skepticism. So we're looking at it realistically saying, well, gee, wouldn't Bayer rather not pay benefits in some particular instance because they both make decisions under the plan and they fund the plan. It's fine. But that doesn't mean we abdicate entirely what its authority is under the plan, which is to make factual findings, which is to weigh conflicting medical opinions, and which is to make all final factual determinations under the plan. We don't even have to weigh anything here. There was nothing on the other side of the scale. The only evidence at the time the termination decision occurred was that she was not disabled. Subsequently, the district court augmented the record, allowed everything in that was moved for, and any prejudice we would submit that may have existed prior to that time was cured. If there's no further questions. Thank you, counsel. Mr. Fleischman, you have some reserve time. Yes, thank you, Your Honor. Mr. Fleischman, if you could begin with an answer to my colloquy with Mr. Shreifstein, which is you were allowed an opportunity by the district court to get additional information that was not in front of Bayer, was not in front of the ERC, and that included the lyrical warning and an additional letter from Dr. Yip. So if you're telling us that you didn't have an opportunity because she didn't know what she had to say in response to Dr. Hennessy in that final September 30th letter, why wasn't that cured by the opportunity the district court gave you to submit additional information? Well, Your Honor, the additional information was submitted in response to defendant's response brief, where they alleged that there was no objective evidence of her illness, and we were arguing that there was objective. The definition in the policy doesn't require objective illness of disability. It requires objective evidence of illness, and courts have found that the trigger point test for fibromyalgia is objective clinical evidence of fibromyalgia. So we were pointing out that there was objective evidence of fibromyalgia. In regards to Dr. Hennessy's report, we simply pointed out that in the record, all of these, you know, all of the basis for his opinion were that fibromyalgia is by definition not disabling and that she has these ADLs, and the record doesn't support that these ADLs are. Oh, I'm sorry. The court did find that there was a procedural error here on the part of Bayer, and it seemed to give an opportunity to you to provide additional information as a corrective to the error that Bayer committed. Why didn't you just throw in all? If this would have been simple to have come forward and said, in an eight-hour day, she drives four hours, and she's got to go from Newport Beach to Santa Monica, and that's more than an hour. Yes, Your Honor. That would have been simple. Instead of she drives four hours out of an eight-hour day, and she's stopping at every CVS in southern Orange County. Yes, Your Honor. The court never actually allowed us to provide. Did you ask the opportunity? No, Your Honor. We just submitted it with our reply brief in response to their response brief because they brought up a new argument that was never before the plaintiff. We responded to, you're right, had we known that we could have augmented the record, we would have probably provided more evidence. But since you were complaining that there was a procedural error by Bayer, wouldn't it have been strategic on your part to have said, had we had the opportunity, Your Honor, we could have easily answered Dr. Hennessy's concerns, which were reflected in the September 30th letter? To tell you the truth, Your Honor, we did not believe that the activities of daily living were his actual concerns. He doesn't mention them in his conclusions. But that's what Bayer relied on, so it doesn't really matter what you think Hennessy said. That's what Bayer relied on. Well, Your Honor, in the denial letter, the September 30th denial letter, while they're listed, the activities of daily living are listed, they're not tied in any way to the reason for denial. The committee says that they are not doctors, and they upheld the denial based on the opinion of Dr. Hennessy. And so we addressed what we considered to be the opinion of Dr. Hennessy's, which were his conclusions, rather than the kind of body of the letter. Counsel, Mr. Shripstein has told us that your side was told four times to submit evidence. Do you disagree with that statement? The regulations require that they specify what evidence is required. What defendants told us, and it's in those letters that I talked about earlier, was if you have any objective medical evidence or other documentation to support your claim, it is very important to submit it with your appeal. Now, Ms. Ibrahim's claim had originally been approved based on treatment notes from Dr. Yip. So after her benefits were denied on April 27th, she submitted further treatment notes from Dr. Yip up until May 10th. And in the belief that since they had worked before and they had constituted that objective evidence before, you know, why wouldn't they this time? I'm not really sure why they wouldn't. I guess because it wasn't specifically what the plan was looking for. But if the plan has something, that's one of the things, you know, Your Honor, defendants have mentioned Saloma. Saloma follows Butten v. Lockheed in saying if an administrator wants information, they have to ask for it. They can't – and there's many cases out there that say if they want – it's not enough for them to simply say there's not enough objective evidence. They have to specify what objective evidence they're looking for. In this case, the plan requires objective evidence of illness. She was found to have fibromyalgia based on a constellation of trigger points. Courts had previously found that to be objective evidence of illness. The defendants had accepted that as proof of her disability for two months. Without more guidance, Ms. Ibrahim really didn't know what to do. Okay. Anything further, counsel? You know, I believe that's it. All right. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument next in United States v. Obarguedo.
judges: O'SCANNLAIN, RAWLINSON, BYBEE